ESTATE OF IRVING LEE STONE, IRVING K. STONE AND MARCUS M. FARLEY, EXECUTORS AND TRUSTEES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43830.   Promulgated May 5, 1932.

*Richard H. Wilmer, Esq.*, for the petitioner.
*Ralph F. Staubley, Esq.*, for the respondent.

1

4

OPINION.

TRAMMELL: The first issue for consideration here is whether or not the value of the corporate stock transferred by the decedent to a trustee under the trust agreement of July 18, 1923, should be included in determining the value of the gross estate of the decedent for purposes of the estate tax, under the provisions of section 302 (d) of the Revenue Act of 1924.

Paragraph 15 of the trust instrument, set out in our findings of fact above, provided that the terms of said instrument might be added to or modified by the joint written agreement of the decedent and five of the seven named beneficiaries, one of whom was also named as trustee. This fact, the respondent contends, brings the case within the purview of the cited statute. The provisions of the Revenue Act of 1924, pertinent here, read as follows:

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death * * *

*   *   *   *   *   *   *

(d) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for a fair consideration in money or money's worth.

In computing the deficiency the respondent included the stock, comprising the corpus of the trust, in the gross estate of the decedent at a valuation of $555,310. The petitioner contends that no part of the value of the trust property may properly be included in the value of the gross estate.

Subdivision (d) of section 302, *supra*, was enacted for the first time in the Revenue Act of 1924, and the substance of its provisions was continued in the corresponding section of the Revenue Act of 1926.

Prior to the Revenue Act of 1924, where a grantor reserved the power, acting alone, to alter, amend or revoke a trust agreement, the value of the property thereby transferred was included in the value of the gross estate and taxed under section 402 (c) of the Revenue Acts of 1918 and 1921, as a transfer taking effect in possession or enjoyment at or after death, on the theory that prior to the death of the grantor the transfer was not complete. *Chase National Bank* v. *United States*, 278 U. S. 327; *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339.

In the case last cited, the court, in speaking of the general nature of the Federal estate tax, said:

In its plan and scope the tax is one imposed on transfers at death or made in contemplation of death and is measured by the value at death of the interest which is transferred. * * * It is not a gift tax and the tax on gifts once imposed by the Revenue Act of 1924 * * * has been repealed * * *. One may freely give his property to another by absolute gift without subjecting himself or his estate to a tax * * *.

In *Reinecke* v. *Northern Trust Co.*, *supra*, the court held in effect that, where the donor reserved the power to modify the trust only with the consent of one or more of the beneficiaries, the transfer was immediately complete, and was not a transfer which occurred at the subsequent date of death; hence, the value of the trust property should not be included in the gross estate subject to tax. On this point the court said:

Since the power to revoke or alter was dependent on the consent of the one entitled to the beneficial, and consequently adverse, interest, the trust, for all practical purposes, had passed as completely from any control by decedent which might enure to his own benefit as if the gift had been absolute.

See also *May* v. *Heiner*, 281 U. S. 238.

In the instant case, the decedent reserved the power to modify the trust instrument only by the joint written agreement of himself and five of the seven named beneficiaries, one of whom was the trustee who acted as such for himself and the remaining six beneficiaries, all of whose interest were adverse to that of the decedent. Under the doctrine laid down in *Reinecke* v. *Northern Trust Co.*, *supra*, it is our opinion, therefore, that the transfer was not of a testamentary character, but was as fully completed at date of execution of the trust instrument as if the gift had been absolute. At decedent's death no transfer occurred, nor was there any shifting of economic benefits in the property. The decedent had no interest in the trust property at the time of his death, and hence it should not be included in deter-

mining the value of the gross estate under subdivision (a) of section 302 of the Revenue Act of 1924, *supra*.

We adopted the foregoing view in *Colonial Trust Co. et al., Executors*, 22 B. T. A. 1377, 1386, where the decedent had reserved the right to amend, alter or modify the trust in conjunction with the trustees and beneficiaries. That case involved section 302 (d) of the Revenue Act of 1924, which is the same statute relied upon by the respondent as authority for his action in the present case.

The same interpretation of the law has repeatedly been adopted by the courts. In *White v. Erskine*, 47 Fed. (2d) 1014, the decedent reserved the right to amend the trust instrument with the assent only of the trustee. The case arose under the Revenue Act of 1926. In affirming the decision of the District Court that the value of the trust property should not be included in the gross estate subject to tax, the United States Circuit Court of Appeals for the First Circuit, in its opinion at page 1016, said:

The government now contends in effect that by subdivision (d) [of section 302] Congress has undertaken to impose a new form of excise tax, viz., a tax on the power to alter or revoke before death a trust created by the grantor, whether the power be of a general or limited nature. We do not think Congress intended by the addition of subdivision (d) to add a new form of tax. It was only "to the extent of the interest" of the decedent in the trust fund, and at his death, that subdivision (d) adds anything to the value of the gross estate. If the decedent had no beneficial interest in the trust fund at his death, under the construction of the Supreme Court in the above-cited cases, there was nothing transferred from him at death within the meaning of section 301, which imposes the tax.

\* \* \* \* \* \* \*

In other words, where a grantor, either alone or in conjunction with any-one not a beneficiary under the trust, has retained "the power to revest in himself title to any part of the trust," \* \* \* then the body of the trust at the death of the decedent may be included in the value of the gross estate, but where the decedent has no such power except by the consent of an adverse party as one of the beneficiaries, or as in this instance of the trustee for the beneficiaries, the right of revocation is gone from the donor and also all beneficial interest for taxing purposes under section 301 of the act.

To hold that Congress under subdivision (d) intended under the guise of a tax on the transfer of property at death to impose a tax solely on a limited power of appointment under it, would be contrary, not only to the spirit of the act, but the express terms of section 301 \* \* \* and so doubtful a construction that the contrary intent should be resolved in favor of the tax-payer \* \* \*.

To the same effect, see *Brady v. Ham*, 45 Fed. (2d) 454, which involved section 302 (d) of the Revenue Act of 1924, and in which case the decedent had retained very broad powers to alter the trust, change the trustees and name other beneficiaries, *except herself*.

See also *Cover v. Burnet*, 53 Fed. (2d) 915, where the decedent reserved the power to modify the trust, except that no part of the

corpus should be withdrawn by him, and the Commissioner sought to exact an estate tax under section 302 (d) of the Revenue Act of 1926. The Court of Appeals for the District of Columbia held that the value of the trust property in that case should not be included in the value of the gross estate, subject to the tax.

On the first issue, the action of the respondent is reversed.

The second issue has been settled by the stipulation of the parties, and pursuant thereto the petitioner is entitled to additional deductions from the value of the gross estate, as determined by the respondent in his deficiency letter, in the amounts of $15,000 and $647.48 on account of expenditures for executors' fees and legal services, respectively.

The third issue arises from the affirmative averments contained in paragraph 7 of the respondent's amended answer, wherein it is alleged that in determining the deficiency certain amounts were allowed as deductions from the gross estate, under the heading of debts of the decedent and mortgages, in excess of the amounts properly so allowable, and the respondent prays that the deficiency be increased accordingly.

The stipulated facts, which we have incorporated in our findings of fact, show that the respondent allowed as deductions from the gross estate (a) the indebtedness of the decedent to Minnie S. and Abbie S. Moore, represented by his unsecured promissory note in the principal amount of $8,500, plus accrued interest in the amount of $36.84, and (b) decedent's promissory note in the principal amount of $75,000, payable to the Northwestern Mutual Life Insurance Company, secured by a mortgage on certain real estate of the decedent, together with accrued interest in the amount of $1,409.38. Both of said items of principal indebtedness are included among those referred to in paragraph 3 of the trust agreement.

In respect of the indebtedness due to the insurance company which was secured by a mortgage upon the decedent's real estate, the facts show that the real estate was owned by the decedent at the time of his death and the value thereof was included in the value of the gross estate as finally determined by the respondent. The amount of this indebtedness we think is clearly allowable as a deduction under section 303 (a) (1) of the Revenue Act of 1924, which expressly provides that:

Sec. 303. For the purpose of the tax the value of the net estate shall be determined—

(a) In the case of a resident, by deducting from the value of the gross estate—

(1) Such amounts for * * * unpaid mortgages upon, or any indebtedness in respect to, property * * * to the extent that such * * * mortgages, or indebtedness were incurred or contracted bona fide and for a fair consideration in money or money's worth,

Section 302 of the same act provides that the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, " to the extent of the interest therein of the decedent at the time of his death," with restrictions not material here. The interest of a decedent in mortgaged realty extends only to the value of the realty, less the amount of the mortgage, and that Congress intended that the amount of a bona fide mortgage should, therefore, be allowed as a deduction from the gross estate in the case of a resident decedent, where the value of such real estate is included in the value of the gross estate, is made plain by the express provisions of section 303, *supra*, and the right to such deduction can not be defeated because of a conditional provision for the payment of the indebtedness out of a trust fund where the indebtedness has not in fact been so discharged. In our opinion, the original action of the respondent in allowing as a deduction the aggregate amount of the principal and accrued interest on the mortgage here in question was correct, and his prayer that the deficiency be increased by disallowing said amount as a deduction and including same in the gross estate, is denied.

The unsecured promissory note of the decedent in the principal amount of $8,500, plus accrued interest of $36.84, which respondent allowed as a deduction in computing the deficiency, presents a different problem. This item is properly allowable, if at all, only as a claim against the estate. The respondent now contends that he erred in allowing said deduction on the theory that the indebtedness did not constitute a claim against the estate for the reason that the payment of the indebtedness, under the provisions of the trust instrument, was impressed upon the property transferred to the trustee by the decedent during his lifetime.

We are unable to agree with this contention of the respondent. In the first place, the decedent's direction that the trustee pay the indebtedness in question was not absolute, but conditional. The trust instrument provided only that the cash dividends upon the transferred stock, if any, should be applied on the indebtedness, and that the principal of said stock might be used for the same purpose at the discretion of the trustee. However, if the decedent had unconditionally directed the trustee to pay said indebtedness out of trust funds or property, unless and until it was in fact so paid the amount of such indebtedness would constitute a claim against the decedent's estate, unless the creditors had agreed to look to the trustee for payment, which would in effect amount to a novation. It is the generally accepted rule that a creditor may look to the debtor for satisfaction of his claim, which right can not be defeated by a transfer or assignment of the debtor's property to a trustee, without the consent of the creditor. And this is the recognized rule in Michigan. *Parsons* v.

*Clark*, 59 Mich. 414; 26 N. W. 656; *Detroit Stove Works* v. *Osmun*, 74 Mich. 7; 41 N. W. 845; *Warner* v. *Littlefield*, 89 Mich. 329; 50 N. W. 721. In the last case cited the Supreme Court of Michigan summarized the rule as follows:

> The creditors are not compelled to accept the terms proffered in the assignment; they may stand aloof from the assignment, and may rely upon the liability of their debtor to pay.

In the instant proceeding, the respondent has affirmatively alleged that in computing the deficiency he erred in allowing as a deduction the amount of the decedent's unsecured note of $8,500 plus accrued interest of $36.84. If the holders of this note assented to the assignment of the decedent's stock and agreed to look to the trustee for payment, or if for any other reason the amount of this indebtedness did not, upon decedent's death, become a claim against the estate. the burden is upon the respondent to establish such fact by competent evidence. This burden respondent wholly failed to discharge; he offered no evidence on this point, nor was any evidence offered thereon by the petitioner. Respondent's contention and prayer for relief in respect to this item are denied. *Schilling Grain Co.*, 8 B. T. A. 1048.

*Judgment will be entered under Rule 50.*