*Decision will be entered under Rule 50.*

CITY BANK FARMERS TRUST COMPANY, AS TRUSTEE UNDER AN AGREEMENT WITH GERTRUDE FELDMAN JAMES, DECEASED, DATED FEBRUARY 21, 1930, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 72522. Promulgated February 21, 1934.

*Edward M. Cameron, Jr., Esq.*, and *George H. Craven, Esq.*, for the petitioner.

*L. S. Pendleton, Esq.*, for the respondent.

SMITH: This proceeding involves a deficiency in the estate tax of Gertrude Feldman James, deceased, in the amount of $11,840.03. The only question at issue is whether the value of certain securities which the petitioner conveyed in trust prior to her decease was a part of her gross estate for estate tax purposes.

The essential facts have been stipulated. The decedent died a nonresident of the United States on May 20, 1931. Prior to her death and by a certain agreement bearing date of February 21, 1930, she transferred certain securities, consisting principally of stocks and bonds, to the City Bank Farmers Trust Co., as trustee, for the uses and purposes as follows:

1. To hold, invest, reinvest and keep the said trust property invested during the lives of VERA NANETTE JAMES, daughter of the Settlor and of SAMUEL JAMES, husband of the Settlor, and PEGGY FLORENCE JAMES, daughter of the Settlor and of the said SAMUEL JAMES, that is, until the death of the survivor of the said VERA NANETTE JAMES and PEGGY FLORENCE JAMES, said period being hereinafter designated as the " Trust Period "; to collect the rents, issues, and profits thereof and to apply the income from said trust property to and for the use of the Settlor until her death or until the termination of the trust period, whichever event shall first occur, and upon and after the death of the Settlor prior to the termination of the trust period, to hold the said trust property and apply the income thereof as follows:

A. To apply the income thereof to the use of the said SAMUEL JAMES, husband of the Settlor, if then living, until his death or until the termination of the trust period, whichever event shall first occur, or, if not then living, or upon his death prior to the termination of the trust period, to divide the principal into so many equal shares that there shall be one for each child of the Settlor and of the said SAMUEL JAMES then living and one for the descendants then living of a deceased child of the Settlor and of the said SAMUEL JAMES and to dispose of the income and principal of said shares as follows:

(a) To apply the income of each share held for a child of the Settlor and of the said SAMUEL JAMES to the use of such child until his or her death or until the termination of the trust period, whichever event shall first occur, and upon his or her death prior to the termination of the Trust period, to pay over the principal of such share to such child's descendants and in such proportions as such child may have appointed by will and to pay over any part not effectively so appointed in equal parts per stirpes to his or her descendants then living or if none, in equal parts per stirpes to the surviving children of the Settlor and of the said SAMUEL JAMES and the descendants then living of a deceased child of the Settlor and of the said SAMUEL JAMES or, if none be then living, to such persons as shall then constitute the heirs at law of the said SAMUEL JAMES according to the laws of New York then governing the descent of real estate.

(b) To pay over the principal of a share set apart for the descendants of a deceased child, in equal parts per stirpes, to such descendants.

B. Upon the termination of the trust period, to pay over the principal of the trust fund to the said SAMUEL JAMES, if then living, or if not, to the Settlor, if then living, or if not, to such beneficiaries as shall then be receiving income according to the provisions of paragraph 1. A. (a) hereof, and in the same

proportions as provided therein for the distribution of income, or if no such beneficiaries be then living, then to such persons as shall then constitute the heirs at law of the said SAMUEL JAMES according to the laws of New York then governing the descent of real estate.

\* \* \* \* \* \* \*

3. The Trustee may from time to time apply to the use of the Settlor's said husband and descendants or any of them, so much of the principal of the trust as in its discretion it may deem advisable for their proper education, care, comfort, support or advancement in life.

\* \* \* \* \* \* \*

12. The Settlor shall have the right, at any time, and from time to time during her life, by an instrument or instruments in writing delivered to the Trustee to modify, alter or revoke this agreement in whole or in part, or to change any beneficial interest hereunder, provided however, that no such revocation, alteration or change of beneficial interest shall be effected without the consent in writing of the Trustee and of the said SAMUEL JAMES during his life and, after his death, of the Trustee and of FRANK SAMUEL JAMES, brother of the said SAMUEL JAMES, during his life and in case of disagreement between the Settlor and the CITY BANK FARMERS TRUST COMPANY, then the decision of the said SAMUEL JAMES or FRANK SAMUEL JAMES, as the case may be, shall be final; and the Settlor reserves to herself the right to increase this trust by delivering property or making insurance policies payable to the Trustee for that purpose but the duties and liabilities of the trustee shall not be substantially increased without its written consent.

The respondent has determined, as stated in his deficiency notice, that the value of the property so conveyed in trust is includable in the decedent's gross estate " as coming within the purview of Section 302 (d) of the Revenue Act of 1926." The pertinent provisions of section 302 read as follows:

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* \* \* \* \* \* \*

(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through .the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke \* \* \*.

Under the terms of the trust instrument the decedent retained a power to alter or revoke the trust, but only with the written consent of the trustee and of her husband, Samuel James, if living, or, if deceased, his brother, Frank Samuel James. The Supreme Court has held, in *Reinecke* v. *Northern Trust Co.*, 278 U.S. 339, that, where the grantor's right to alter or revoke the trust can be exercised only with the consent of one having a beneficial interest therein, the gift is complete and the property is not taxable in the grantor's estate for estate tax purposes. The Court there said:

* * * He could not effect any change in the beneficial interest in the trusts without the consent, in the case of four of the trusts, of the person entitled to that interest, and in the case of one trust without the consent of a majority of those so entitled. Since the power to revoke or alter was dependent on the consent of the one entitled to the beneficial, and consequently adverse, interest, the trust, for all practical purposes, had passed as completely from any control by decedent which might inure to his own benefit as if the gift had been absolute.

We have since held that *Reinecke* v. *Northern Trust Co.*, *supra*, which arose under the Revenue Act of 1921, is controlling in cases arising under the Revenue Acts of 1924 and 1926 and that the language " through the exercise of a power, either by the decedent alone or in conjunction with *any person*, to alter, amend, or revoke " contained in section 302 (d) should be construed to mean " any person not a beneficiary of the trust." See *Colonial Trust Co. et al., Executors*, 22 B.T.A. 1377; *Estate of Irving Lee Stone et al., Executors*, 26 B.T.A. 1; *Carl F. Holmes*, 27 B.T.A. 660; *David J. Lit et al., Executors*, 28 B.T.A. 853, and cases therein cited. As to what constitutes a revocable trust under sections 166 and 167 of the Revenue Act of 1928, see *Smith* v. *Commissioner*, 59 Fed. (2d) 56; *Bessie R. Jones*, 27 B.T.A. 171; *Iola Wise Stetson*, 27 B.T.A. 173.

There can be no doubt that the decedent's husband, Samuel James, was a beneficiary of the trust in question. After the death of the grantor he was to receive the income from the trust for life or for the remaining term of the trust. The facts are that the grantor died in 1931 and that Samuel James has since received and is still receiving the entire trust income. Under clause 3 of the trust agreement above shown the trustee was authorized to apply so much of the principal of the trust fund as it deemed advisable to his, Samuel James', " care, comfort, support or advancement in life." Under clause B he was entitled upon the termination of the trust, if then living, to receive the entire principal of the trust fund.

It follows that the enjoyment of the trust property was not subject at the time of the decedent's death to any change through the exercise of any power to alter or revoke within the meaning of section 302 (d) of the act.

We are of the opinion that the respondent erred in including the value of the trust property under consideration in the decedent's gross estate.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*